```
USDS SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 11-9-12
```

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------x
GLENN POINDEXTER,

                             Plaintiff,

            -against-

C.O. DAVIS; C.O. FALTINE; C.O. MILTON;
CAPTAIN DIGIOVANNI; THE CLINICAL
STAFF AT M.D.C.; DR. MCCAIN HALL,

                           Defendants.
------------------------------------------------------------x

11 Civ. 2928 (PKC)

MEMORANDUM
AND ORDER

P. KEVIN CASTEL, District Judge:

        Plaintiff Glenn Poindexter, proceeding pro se, brings this action pursuant to 28 U.S.C. § 1983 against defendants, each associated with a state or municipal facility where plaintiff has been a prisoner, alleging that while he was incarcerated at the Manhattan Detention Complex ("M.D.C.") defendants failed adequately to attend to his medical needs.[1] Read liberally, the complaint alleges deliberate indifference to plaintiff's serious medical needs in violation of the Due Process Clause of the Fourteenth Amendment, which, in the context of a claim brought by a pretrial detainee such as plaintiff, provides the same protections as the Eighth Amendment's prohibition against cruel and unusual punishment.[2]

---

[1] In plaintiff's papers, his name is alternatively spelled as Pondexter or Poindexter, and the Court will assume the latter is correct. The complaint's caption identifies defendants as corrections or "C.O.s" Davis, Faltine, and Milton, as well as Captain DiGiovanni and "The Clinical Staff at M.D.C." (Compl. 1.) Under the heading "parties in this complaint," however, plaintiff lists Dr. McCain Hall instead of the clinical staff generally. (Id. at 2.) Additionally, defendants note in their statement of undisputed facts that C.O. Milton's name is actually spelled "Melton." (Def. 56.1. 1.) These inconsistencies have no bearing on the outcome of this motion.

[2] Plaintiff's injury and subsequent treatment occurred when he was a pretrial detainee. As such, his claims would arise under the Fourteenth Amendment's Due Process Clause. See Caiozzo v. Koreman, 581 F.3d 63, 69 (2d Cir. 2009). Deliberate indifference claims are, however, "analyzed under the same standard irrespective of whether they are brought under the Eighth or Fourteenth Amendment." Id. at 72.

Defendants move for summary judgment under Rule 56, Fed. R. Civ. P. Because there is no genuine issue of fact regarding the severity of plaintiff's medical condition or the quality and promptness of the medical care he received, and because the roughly six-hour delay in treatment here is insufficiently serious to allow plaintiff to prevail on his deliberate indifference claim, defendants' motion is granted.

## BACKGROUND

The following facts are either not in dispute or, where there is a dispute, the evidence is viewed in the light most favorable to plaintiff. All times are approximate.[3]

On March 9, 2011, at 11:35 a.m., plaintiff slipped and fell in the common area of a housing unit at the M.D.C., injuring his hand. (Pl. 56.1 ¶ 3; Def. 56.1 Counterstatement ¶ 3.) Plaintiff immediately reported his injury to C.O. Davis, who refused to send plaintiff for medical treatment. (Pl. Dep. 33.) Seven minutes later, a different officer escorted plaintiff to his job washing dishes in the M.D.C. kitchen, where he arrived at 12:00 p.m. (Id. at 33, 37.) Upon arriving at the kitchen, plaintiff informed C.O. Faltine, who was supervising the inmates, that plaintiff had hurt his hand before arriving and needed medical treatment. (Id. at 38.) C.O. Faltine responded that she would send plaintiff back to C.O. Davis for an injury report. (Id. at 40.) While he waited, plaintiff abstained from working and instead placed ice from an ice machine on his injured hand and sat on a box in the kitchen. (Id. at 40, 41.)

---

[3] In response to defendants' motion for summary judgment, which was accompanied by defendants' statement of undisputed facts pursuant to Local Rule 56.1, plaintiff submitted what has been styled a "motion," asking that the defendants' motion for summary judgment be denied. Plaintiff's "motion" is accompanied by his own 56.1 statement (which is not responsive to defendant's statement of undisputed facts), a declaration, and exhibits to that declaration. (Docket No. 57.) In response, defendants have submitted a 56.1 counterstatement and ask that the facts in their original 56.1 statement be accepted as true, given that plaintiff has failed to respond. As the plaintiff is proceeding pro se, however, the Court instead sets forth the facts from plaintiff's deposition transcript and other documents submitted by the parties, accepting plaintiff's version of the facts as true for the purpose of deciding this motion.

Eventually, C.O. Faltine generated an injury report, and a different officer came and escorted plaintiff to the M.D.C. clinic to receive treatment. (Id. at 50; Richards Decl. Ex. B.) Plaintiff arrived at the clinic at 5:11 p.m. and was seen by Allen Walker, a physician assistant. (Pl. Dep. 50.)[4] After examining plaintiff's hand and stating that it appeared broken, Walker wrapped plaintiff's hand in an Ace bandage, put his arm in a sling, and gave him Ibuprofen as pain medication. (Id. at 53.) Walker recorded in plaintiff's medical records that plaintiff's right hand had "swelling & point tenderness w/ [palpation] w/ limited [r]ange of motion." (Richards Decl. Ex. G at NYC 98.) After plaintiff explained that his family was coming to visit him that evening at 6:00 p.m. and that he preferred to delay further treatment until after their visit, Walker issued plaintiff a referral to return the following day for x-rays. (Pl. Dep. 54; Richards Decl. Ex. G at NYC 98.)

At 8:00 a.m. the following morning, plaintiff returned to the clinic where he was informed that he would be going to a Rikers Island facility for x-rays. (Pl. Dep. 55.) Plaintiff arrived at the facility at 11:30 a.m. and later that day was diagnosed as having a closed fracture in his right hand. (Id. at 58; Richards Decl. Ex. G at NYC 92.) The attending doctor rewrapped plaintiff's hand and gave him instructions for caring for his injury. (Pl. Dep. 58-60.) The physician also gave plaintiff a referral to see a hand specialist. (Id. at 61.) Plaintiff did not request or receive pain medication while at the Rikers Island facility that day. (Id. at 58, 60.)

Plaintiff arrived back at the M.D.C. at 1:30 p.m., at which time he informed C.O. Milton that he was in need of pain medication. (Id. at 61, 62.) Milton stated that he would arrange for plaintiff to visit the clinic for medication but instead, and unbeknownst to Milton,

---

[4] Plaintiff described Walker as a doctor, but plaintiff's medical records indicate that Walker is a physician assistant. (Richards Decl. Ex. G at NYC 98.)

3

plaintiff was taken to his cell at 4:15 p.m. (Id. at 62, 64, 66.) At 5:00 p.m. plaintiff received Tylenol with Codeine during one of the three daily medication calls. (Id. at 65, 66.) When asked to recall the pain he experienced on March 9 and 10, plaintiff assigned a consistent pain rating of roughly seven to eight out of ten. (Pl. Dep. 39, 43, 54, 59, 66.)

On March 13, 2011, plaintiff met with Captain DiGiovanni, to whom plaintiff recounted the events that transpired on March 9, including the refusal of C.O. Davis to complete an injury report. (Id. at 84.) Because plaintiff could not write with his injured hand, Captain DiGiovanni completed an Inmate Voluntary Statement Form on plaintiff's behalf. (Richards Decl. Ex. D.) Plaintiff refused to sign the form because Captain DiGiovanni failed to record plaintiff's words verbatim, omitting that C.O. Davis refused to send plaintiff for medical treatment, and also because Captain DiGiovanni stated in the form that the accident occurred while plaintiff was "rushing" to work—a detail that plaintiff believed was untrue. (Pl. Dep. 84-87.)

Following the accident, plaintiff received regular treatment for his injury (including physical therapy and treatment by hand specialists) on dozens of occasions between March 24, 2011 and September 28, 2011. (Pl. Dep. 79; Richards Decl. Ex. G at NYC 9-11.) During this time, plaintiff's medication was renewed or adjusted repeatedly. (Richards Decl. Ex. G at NYC 9-11.) In particular, plaintiff recalls that he met with Dr. McCain Hall on March 15, 2011 to adjust his pain medication, which he felt was not adequate. (Pl. Dep. 76; Richards Decl. Ex. G at NYC 84.)

## DISCUSSION

I. <u>Summary Judgment Standard</u>

Summary judgment "shall" be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Rule 56(a), Fed. R. Civ. P. "The mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact." <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 247-48 (1986). A dispute about a fact is material if it "might affect the outcome of the suit under the governing law." <u>Id.</u> at 248. A dispute about a material fact is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." <u>Id.</u> The moving party bears the burden of identifying matters that it believes demonstrate the absence of a genuine issue of material fact, see <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 323 (1986), and all reasonable inferences are drawn in favor of the nonmoving party, see <u>Scott v. Harris</u>, 550 U.S. 372, 378 (2007); <u>Matsushita Elec. Indus. Co. v. Zenith Radio Corp.</u>, 475 U.S. 574, 587-88 (1986).

A <u>pro se</u> party's submissions are read liberally, a requirement that is especially strong in the summary judgment context where claims are subject to a final dismissal. See <u>Graham v. Lewinski</u>, 848 F.2d 342, 344 (2d Cir.1988) ("[S]pecial solicitude should be afforded pro se litigants generally, when confronted with motions for summary judgment."). "However, at some point in a lawsuit even *pro se* litigants must make clear to the court their claims and the facts that they believe entitle them to specific relief. The summary judgment stage is an appropriate juncture to identify the real issues in a case," even where the plaintiff proceeds <u>pro se</u>. <u>Salahuddin v. Coughlin</u>, 781 F.2d 24, 29 (2d Cir. 1986) (citations omitted).

II. Deliberate Indifference To Serious Medical Needs

The Eighth Amendment prohibits infliction of "cruel and unusual punishments," including punishments that "involve the unnecessary and wanton infliction of pain." Gregg v. Georgia, 428 U.S. 153, 173 (1976). A prison official's "deliberate indifference to serious medical needs of prisoners constitutes the 'unnecessary and wanton infliction of pain'" in violation of the Eighth Amendment. Estelle v. Gamble, 429 U.S. 97, 104 (1976) (citation omitted). To state a "cognizable" Eighth Amendment claim in this context, "a prisoner must allege acts or omissions sufficiently harmful to evidence deliberate indifference to serious medical needs." Id. at 106.

The deliberate indifference standard has two prongs. Farmer v. Brennan, 511 U.S. 825, 834 (1994). The first prong is objective: the alleged deprivation of medical care must be "sufficiently serious." Salahuddin v. Goord, 467 F.3d 263, 279 (2d Cir. 2006) (quoting Wilson v. Seiter, 501 U.S. 294, 298 (1991)). The second prong is subjective: the charged official must have acted with a "sufficiently culpable state of mind." Hathaway v. Coughlin, 99 F.3d 550, 553 (2d Cir. 1996).

The objective prong is divided into two subparts. "The first inquiry is whether the prisoner was actually deprived of adequate medical care," keeping in mind that only "reasonable care" is required. Salahuddin, 467 F.3d at 279 (citing Farmer, 511 U.S. at 844-47). "Second, the objective test asks whether the inadequacy in medical care is sufficiently serious" by examining "how the offending conduct is inadequate and what harm, if any, the inadequacy has caused or will likely cause the prisoner." Id. at 280 (citing Helling v. McKinney, 509 U.S. 25, 32-33 (1993)). In cases where no care is provided, this means assessing the seriousness of the underlying medical condition, whereas in cases of delayed or otherwise inadequate care, both the

6

underlying condition and the seriousness of any deficiency in care are assessed. See id. In the latter case, "it's the particular risk of harm faced by a prisoner due to the challenged deprivation of care, rather than the severity of the prisoner's underlying medical condition, considered in the abstract, that is relevant for Eighth Amendment purposes." Smith v. Carpenter, 316 F.3d 178, 186 (2d Cir. 2003).

While "[t]here is no settled, precise metric" as to how serious the condition must be, Brock v. Wright, 315 F.3d 158, 162 (2d Cir. 2003), the degree of seriousness required has been described as "a condition of urgency . . . that may produce death, degeneration, or extreme pain." Johnson v. Wright, 412 F.3d 398, 403 (2d Cir. 2005) (citation and quotation marks omitted). Relevant factors include whether "a reasonable doctor or patient would find [the ailment] important and worthy of treatment;" whether the ailment "significantly affects the individual's daily activities;" and whether the pain is "chronic and substantial." Chance v. Armstrong, 143 F.3d 698, 702 (2d Cir. 1998) (citation and quotation marks omitted). "[I]n most cases, the actual medical consequences that flow from the alleged denial of care will be highly relevant to . . . whether the denial of treatment subjected the prisoner to a significant risk of serious harm." Smith, 316 F.3d at 187.

The subjective prong requires the prisoner to establish that the defendant acted with a "sufficiently culpable state of mind." Wilson, 501 U.S. at 298. The standard is deliberate indifference to the prisoner's health, "a mental state equivalent to subjective recklessness as the term is used in criminal law." Salahuddin, 467 F.3d at 280 (citing Farmer, 511 U.S. at 839-40). "[A] prison official does not act in a deliberately indifferent manner unless that official 'knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and

he must also draw the inference.'" Hathaway v. Coughlin, 37 F.3d 63, 66 (2d Cir. 1994) (quoting Farmer, 511 U.S. at 837). A prisoner must show "more than negligence, but less than conduct undertaken for the very purpose of causing harm." Id. (citing Farmer, 511 U.S. at 836).

III. <u>Plaintiff Did Not Experience A Sufficiently Serious Deprivation Of Medical Care</u>

By his own admission, plaintiff's initial injury occurred, through no fault of defendants, when plaintiff slipped and fell. Plaintiff has not alleged (and there is no evidence to suggest) that his initial injury was caused by any action or omission by defendants. Thus, the only harm to plaintiff that could conceivably be attributed to defendants would arise from the delay in treating plaintiff's injury, or from the inadequacy of the treatment plaintiff received.

Drawing all reasonable inferences in plaintiff's favor, the time between his injury and when he first received medical treatment did not exceed six hours. Plaintiff states that he fell "[a]t some point between 11:35 a.m. and 12 p.m." (Pl. 56.1 ¶ 3.) Plaintiff arrived at the clinic for treatment at 5:11 p.m. (Pl. Dep. 50.) He spent the intervening hours sitting down, applying ice to his hand. (Id. at 40, 41.) Although plaintiff's hand was not x-rayed until the following morning, that delay was due to plaintiff's desire to defer the x-ray until after a visit with his family. (Id. at 54.) Following his x-ray, plaintiff received regular medical treatment and pain medication. (Id. at 79.)

Plaintiff's underlying injury may have caused discomfort and some degree of pain, but it did not constitute "a condition of urgency . . . that may produce death, degeneration, or extreme pain." Johnson, 412 F.3d at 403 (citation and quotation marks omitted). In cases where the Second Circuit has held that a delay in medical treatment was sufficient to survive a motion for summary judgment, the delay has persisted for months or years. See Salahuddin, 467 F.3d at 281 (five-month delay in liver biopsy needed for Hepatitis C treatment); Hathaway v.

8

Coughlin, 841 F.2d 48, 50-51 (2d Cir. 1988) (two-year delay in surgery to correct broken pins in hip); see also Chance, 143 F.3d at 702-703 (allegation of inadequate dental treatment spanning several months that resulted in extreme pain, tooth deterioration, and inability to eat properly held sufficiently serious to survive motion to dismiss). Simply put, a six-hour period during which plaintiff sat with an ice pack on his injured hand does not approach the threshold requirement of seriousness for a deliberate indifference claim to survive. Following the six-hour period, plaintiff was given pain medication and consistent medical treatment. The same is true of the brief period on March 10 during which plaintiff went without pain medication until the regular medication call at 5:00 p.m. There is nothing in the record to suggest that these modest delays in treatment in any way exacerbated plaintiff's injury or caused him any harm except for the discomfort and some degree of pain he experienced while waiting to receive treatment.

That plaintiff's injury was not sufficiently serious is perhaps best demonstrated by the fact that plaintiff himself chose to defer medical care. Plaintiff admitted in his deposition (and the fact is corroborated by his medical records) that he declined x-rays on March 9 in order to visit with his family, electing to put off further treatment until the following morning. (Pl. Dep. 54; Richards Decl. Ex. G at NYC 98.) Thus, the most significant delay in plaintiff's treatment occurred not through any act or omission by defendants, but by plaintiff's own choice. Plaintiff's actions were inconsistent with any present claim that his underlying injury or any delay in treatment was serious or urgent.

CONCLUSION

For the foregoing reasons, defendants' motion for summary judgment (Docket No. 43) is GRANTED. Plaintiff's "motion" in opposition (Docket No. 57) is DENIED. The Clerk is directed to enter judgment for defendants. The Court certifies pursuant to 28 U.S.C. § 1915(a)(3) that any appeal from this Order would not be taken in good faith and in forma pauperis status is denied.

SO ORDERED.

_____
P. Kevin Castel
United States District Judge

Dated:   New York, New York
         November 8, 2012